THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **ALLIANCE DISTRIBUTION (PTY), LTD** | * | **CIVIL ACTION NO. 05-1356** |
| **Versus** | * | **JUDGE JAMES** |
| **LUV N' CARE, LTD** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion for Summary Judgment (Doc. #12) filed by Defendant, Luv N' Care, Ltd. For the reasons stated below, it is recommended that the motion be **DENIED**.

## Background

This case stems from a contract dispute between Plaintiff, Alliance Distribution (PTY), Ltd. ("Alliance") and Defendant, Luv N' Care, Ltd. ("LNC"). Alliance and LNC entered into a written contract on November 22, 2002, whereby LNC appointed Alliance, for a period of five years, as the exclusive distributor of LNC and Nuby brand infant care products in the territory of Southern Africa. At the time of the contract, Alliance was the owner of a trademark known as "Baby Club," and Alliance was already distributing in the Southern Africa territory various baby products under the Baby Club trademark. LNC and Alliance agreed in the contract to "piggy back" LNC's products on Alliance's trademark by placing both LNC's trademarks and Alliance's Baby Club trademark on all products; however, LNC acknowledged in the contract that it would have no rights or interest, including any right of use, in Alliance's Baby Club trademark, trade name, or brand name.

In a letter dated April 26, 2005, LNC purported to terminate the contract with Alliance

1

asserting that: (1) several months prior, Alliance sold its company; (2) as a result of the alleged sale, LNC acquired certain approval rights regarding continuance of the contract with the new company; and (3) LNC had chosen not to continue the contract due to an alleged conflict between the LNC/Nuby brand products and the products Alliance was marketing under its "Baby Club" trademark.  On May 10, 2005, Alliance wrote LNC advising that no change in Alliance's status had occurred and that Alliance is and at all relevant times has been a wholly owned subsidiary of Alliance Pharmaceuticals Limited, that no conflict exists between the LNC/Nuby brand lines and Alliance's Baby Club lines, and that there was no basis for termination of the contract.  LNC responded with a letter, dated May 23, 2005, stating that it intended to terminate the contract because Thebe Healthcare, Ltd. had allegedly acquired a majority of the issued and outstanding stock in Alliance, that the alleged change of a controlling interest in the voting stock of Alliance triggered LNC's alleged rights to approve the alleged transferee, and that LNC did not approve and was therefore terminating the contract.

**Lawsuit**

According to the contract, Alliance was required to order LNC and Nuby products either directly from LNC or from factories authorized by LNC to produce such products.  Alliance placed five orders with Elung Industrial Company, Ltd., a factory authorized in the contract by LNC to produce LNC and Nuby products, in late January, 2005 or early February, 2005.  Alliance alleges that the manufacture of the products contained in one of these orders was completed, but was shipped to one of Alliance's retail customers at the instruction of LNC.  Alliance alleges that these products were improperly sold to its customer because the products had been ordered by Alliance, manufactured for Alliance, owned by Alliance and were labeled with Alliance's Baby Club trademark, in which LNC has no rights, including no right to sell

products labeled with the Baby Club trademark. Alliance also alleges that it has not received the other four orders it placed with Elung Industrial Company, Ltd. Alliance alleges that one of its customers was informed by LNC that Alliance is no longer the distributor of LNC and Nuby brand products in the Southern Africa territory.

Alliance filed suit against LNC on July 28, 2005, seeking (1) specific performance of the contract, (2) alternatively, dissolution of the contract and damages for breach, (3) damages for delay, (4) damages for conversion, (5) damages for intentional interference with contract, (6) damages for the unauthorized use of the Baby Club trademark, and (7) damages for unfair trade practices.

LNC filed the instant Motion for Summary Judgment on December 19, 2005 arguing that the contract was breached by Alliance before any of the actions complained of by Alliance occurred and therefore should be declared null and void. The alleged breach of contract concerns two of the contract provisions: (1) Assignment and (2) Indemnification and Insurance. Plaintiff opposes the motion and Defendant has replied to Plaintiff's opposition.

## LAW AND ANALYSIS

**Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate

through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**<u>Assignment Clause</u>**

The first contract clause that allegedly has been breached is paragraph 24, "Assignment," it states as follows:

> This Agreement may not be assigned or transferred by Distributor in any manner whatsoever (including but not limited to, by merger, consolidation, or purchase of a substantial part of the assets of Distributor or of a controlling interest in the voting stock of Distributor) without the written consent of LNC which shall not be unreasonably withheld by LNC unless the assignment is a competitor of LNC. Any assignment of this Agreement by LNC may not abridge the rights of Distributor hereunder.

LNC alleges that during 2004, Thebe Health Care (Pty) Ltd. ("Thebe"), who previously held approximately 33% of the entire issued share capital in Alliance Pharmaceuticals purchased the remaining issued share capital of Alliance Pharmaceuticals with the net effect being that Alliance Distribution became a wholly owned subsidiary of Thebe. LNC states that it never

received prior written notification of the transactions with Thebe and did not agree to the transaction. LNC argues that Alliance breached the Assignment clause of the contract and therefore wants the contract declared null and void.

In an affidavit provided by Yaseen Bhayat ("Bhayat"), the CEO of Alliance, he explains the transaction. Bhayat explains that Defendant, Alliance Distribution (Pty) Ltd, is a company incorporated in the Republic of South Africa and has always been a wholly owned subsidiary of Alliance Pharmaceuticals (Pty) Ltd., which is a separate and distinct entity from Defendant, Alliance Distribution. Bhayat states that Thebe Health Care (Pty) Ltd. is also incorporated and a separate and distinct juridical entity from both Alliance Distribution and Alliance Pharmaceuticals. The referenced stock transaction involved Thebe and Alliance Pharmaceuticals, but did not involve Alliance Distribution. Bhayat asserts that the transaction did not cause or result in "a sale of a substantial part of the assets" or a sale of "a controlling interest of the voting stock" of Alliance Distribution. Bhayat states that Alliance is, and has always been, a wholly owned subsidiary of Alliance Pharmaceuticals, and Alliance Pharmaceuticals, not Thebe, remains the sole owner of the voting stock of Defendant, Alliance Distribution.

In addition, Bhayat asserts that former directors of Alliance met with Michael Ariel, LNC's President of Exports, in October of 2004, and informed Mr. Ariel of Thebe's prospective purchase of Alliance Pharmaceuticals. Mr. Ariel did not express any concern about the transaction, and LNC did not express any objection to it for approximately six months.

Under Louisiana law, a corporate entity is a juridical person, the personality of which is "distinct and distinguishable from that of its members." La. C.C. Art. 24. A corporation remains a legal entity even though another corporation obtains all of its corporate stock. *National Oil*

*Works v. Korn Bros.,* 164 La. 800, 804, 114 So. 659, 660 (La.1927). "The mere fact that two corporations are affiliated in some way (e.g. parent-subsidiary) does not mean that a contract with one of those corporations is a contract with the other." Cable & Connector Warehouse, Inc. v. Omnimark, Inc., 700 So.2d 1273, 1276 (La.App. 4 Cir.,1997).

LNC also argues that the fact that personnel at Alliance changed after the stock transaction involving Thebe is evidence that an assignment occurred and that the Assignment clause was breached. This argument lacks merit. Changes in personnel are commonplace in the corporate world, and have no effect on existing contracts with other companies. The contract at issue is a contract between Alliance and LNC, and not between any individual person or persons of either company. Since Alliance Pharmaceuticals was the sole owner of Alliance Distribution at the time the contract was formalized, and Alliance Pharmaceuticals remains the sole owner of Alliance Distribution, there has been no breach of the Assignment clause of the contract. It is recommended that summary judgment on this basis be **DENIED**.

**Insurance Clause**

The second contract clause that has allegedly been breached is paragraph 13, "Indemnification and Insurance," it states as follows:

> The prices, terms and conditions of this Agreement have been fixed in express awareness and consideration of the following allocation of liability for third party claims which may arise pursuant to performance hereunder. Distributor shall carry product liability insurance covering Products in the Territory. In the Territory, and only in the Territory, Distributor shall indemnify and hold LNC harmless of and from all judgements, damages, awards, suits, claims, fines, penalties, and expenses (including reasonable attorneys' fees) arising directly or indirectly as a consequence of the performance or failure or breach of performance by Distributor. In defending any such claim, action, or proceeding, LNC, if a party to the proceeding, may use counsel of its own selection or may require Distributor to retain and pay for counsel acceptable to LNC. Distributor represents, warrants, and covenants that all Product it sells shall be covered, regardless of where sold, by comprehensive product liability insurance, with broad

6

form vendor's endorsement, with minimum limits of liability in the amount of $2,000,000 bodily injury coverage and $50,000 property damage coverage, and is covered by contractual liability insurance with identical policy limits, and that this Agreement, Distributor shall deliver to LNC a certificate of insurance indicating coverage in effect as outlined herein above. Such certificate shall also include all policy numbers, insurers, expiration dates, and a provision that the coverage will not be canceled without at least thirty (30) days prior written notice to LNC.

LNC asserts that it received no certificate of insurance prior to August 18, 2005, and that the certificate received on that date was dated after the current lawsuit had been filed. LNC states that the certificate received on August 18, 2005, was for insurance coverage beginning April 1, 2005, and that LNC did not receive certificate of coverages for the time prior to that date. In addition, LNC argues that the insurance certificate does not comply with paragraph 13 of the contract because there is no provision that coverage will not be cancelled without at least 30 days prior written notice to LNC.

LNC also alleges that the certificate of insurance that it originally received showed Alliance Pharmaceuticals, Ltd. as the insured, not Alliance Distribution. In addition, the certificate stated it was the original (dated 2005 for the first time) and stated that "rights of recourse against suppliers must be maintained at all times," which LNC asserts does not comply with paragraph 13. LNC complains that it has never received a copy of the insurance policy, despite numerous requests, and states that there is no evidence that an actual insurance policy ever existed because the August 18, 2005, certificate received was written by the Plaintiff as the "Broker."

Alliance points out that the contract was in effect for nearly three years before LNC ever raised the issue of receiving a copy of an insurance certificate. In addition, LNC's pre-litigation basis for terminating the contract never mentioned the alleged breach of the insurance clause of

the contract. Alliance asserts that when LNC did request an insurance certificate (after the lawsuit was filed), supplied same and that its obligation was fulfilled because LNC's attorney notified Alliance's attorney that Alliance "is willing to accept the insurance policy if it is as 'advertised.'" Although LNC requested a certified copy of the insurance policy, Alliance notes that the contract does not require that a certified copy of the policy be provided, but only a certificate of insurance; therefore, it is under no obligation to provide LNC a copy of the policy under the terms of the contract.

There is no evidence that Alliance has materially breached the insurance clause of the contract. LNC argues that there is no evidence that insurance coverage existed prior to April 2005; however, at least one of the certificates attached as an exhibit to LNC's motion shows a an original inception date of March 2001 (see Plaintiff's Exhibit 2 at p.2). More importantly, LNC never requested to see proof of insurance until after Alliance filed suit, thereby waiving the requirement, at least until such time as the insurance certificate was actually requested. Since LNC's counsel notified Alliance that the coverage evidenced by the certificate was satisfactory, and since there was no requirement under the contract that Alliance supply a copy of the policy itself, the failure to supply the certificate at an earlier time or to provide a copy of the policy itself does not constitute a breach of the contract or a basis for terminating it. At most, the failure to supply a certified copy of the insurance policy, if properly requested in the context of this litigation, could form the basis for a motion to compel; however, no such motion is before the court. LNC has provided no factual basis for its concern that the insurance represented by the certificate does not in fact exist, and has admitted that the insurance evidenced by the certificate of insurance was satisfactory.

For the reasons stated above, **IT IS RECOMMENDED** that Defendant's Motion for

Summary Judgment (Doc. #12) be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 27th day of March, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE